No. 16-6981

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

FREDERICK BANKS,

*Petitioner-Appellant*,

v.

MARK HORNAK, et al.,

*Respondents-Appellees.*

_____

On Appeal from the United States District Court for the
Eastern District of North Carolina,
No. 5:16-ct-03160-BO

_____

## REPLY BRIEF FOR PETITIONER-APPELLANT
_____

ERIN E. MURPHY
ROBERT M. BERNSTEIN
 *Counsel of Record*
KIRKLAND & ELLIS LLP
Suite 1200
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5042
robert.bernstein@kirkland.com

*Counsel for Petitioner-Appellant*

April 7, 2017

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

ARGUMENT ......................................................................................... 3

I.     Mr. Banks Is Not A "Prisoner" Under §1915(g) Because His Nearly Two-Year Detention Is Not For Criminal Charges ............................ 3

       A.    The Government's Position to the Three-Strikes Rule Cannot Be Reconciled With This Court's Precedents or Those of Nearly Every Other Circuit ................................... 4

       B.    The Government's Alternative Approaches to the Rule Followed by This Court Rest on Neither Law nor Reason ................. 7

       C.    Mr. Bank's 20-Month Detention Does Not Stem Simply From Bail Denial ................................................................ 10

       D.    This Court Should Resolve Any Ambiguity in the Three-Strikes Rule in Favor of Mental-Health Patients ................................11

II.    Habeas Petitions and Bona Fide Mandamus Petitions Do Not Fall Within the Three-Strikes Rule ...................................................... 14

III.   Section 1915(g) Does not Authorize Dismissal........................................... 18

CONCLUSION ................................................................................... 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Cases**

*Haight v. Thompson*,
  763 F.3d 554 (6th Cir. 2014) ...........................................................................13

*Hicks v. James*,
  255 F. App'x 744 (4th Cir. 2007) ......................................................................6

*Hughes v. Farris*,
  809 F.3d 330 (7th Cir. 2015) .............................................................................7

*In re Banks*,
  450 F. App'x 155 (3d Cir. 2011) ......................................................................16

*In re Grant*,
  635 F.3d 1227 (D.C. Cir. 2011) ................................................................. 15, 16

*In re Sindram*,
  498 U.S. 177 (1991) ..........................................................................................12

*Jackson v. Indiana*,
  406 U.S. 715 (1972) ..................................................................................... 8, 19

*Johnson v. City of Shelby*,
  135 S. Ct. 346 (2014) ................................................................................. 17, 18

*Jones v. Bock*,
  549 U.S. 199 (2007) ..........................................................................................12

*Madden v. Myers*,
  102 F.3d 74 (3d Cir. 1996) ...............................................................................15

*Martin v. Grimshaw*,
  198 F.3d 248, 1999 WL 1021705 (6th Cir. 1999) ...........................................16

*Michau v. Charleston Cty.*,
  434 F.3d 725 (4th Cir. 2006) .............................................................................5

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ..........................................................................................13

*Robinson v. California*,
 370 U.S. 660 (1962) ..................................................................................6

*Simmat v. U.S. Bureau of Prisons*,
 413 F.3d 1225 (10th Cir. 2005) .............................................................15

*United States v. Comstock*,
 560 U.S. 126 (2010) ................................................................................6

**Statutes**

18 U.S.C. §3161(c) .....................................................................................11

18 U.S.C. §3161(h) .....................................................................................11

18 U.S.C. §4241(a) .......................................................................................6

18 U.S.C. §4241(d) .......................................................................................9

18 U.S.C. §4246 ............................................................................................8

28 U.S.C. §1361 ..........................................................................................15

28 U.S.C. §1651 ..........................................................................................15

28 U.S.C. §1915 ..........................................................................................11

28 U.S.C. §1915(g) .....................................................................................14

28 U.S.C. §1915(h) ...................................................................................1, 3

28 U.S.C. §476 ..............................................................................................8

42 U.S.C. §1983 ..........................................................................................17

Fed. R. Crim. P. 7(c) ..................................................................................10

**Other Authorities**

Gary Fields & John R. Emshwiller,
 *Many Failed Efforts to Count Nation's Federal Criminal Laws*,
 Wall Street J., July 23, 2011, http://on.wsj.com/2oKFAiM ..................7

H.R. Rep. No. 650, 86th Cong., 1st Sess. (1959) .....................................12

iii

Order, *United States v. Banks*,
    No. 2:15-cr-168 (W.D. Pa. Feb. 8, 2017), ECF No. 273 ....................................19

Order, *United States v. Banks*,
    No. 2:15-cr-168 (W.D. Pa. Mar. 30, 2017), ECF No. 288..................................19

## INTRODUCTION AND SUMMARY OF ARGUMENT

The government's position is that Mr. Banks—detained for nearly two years by the Attorney General under a provision that contemplates a four-month detention—cannot challenge the legality of his confinement as a *pauper* under §1915. It is little surprise, then, that the government misleadingly describes Mr. Banks as nothing more than a "federal prisoner" who is "under criminal indictment" and is "subject to psychiatric evaluations." Resp.Br.1.

The government's position is foreclosed by this Court's precedents and those of virtually every panel to have considered the meaning of "prisoner" in §1915. Even the government does not fully embrace the idea that the fact of present detention, coupled with a prior indictment or conviction, makes a person a "prisoner." Resp.Br.23. A substantial majority of courts have rejected the government's theory that the existence of criminal charges or convictions is the relevant inquiry. Under the government's reasoning, this Court's decisions in *Michau*, *Perkins*, and *Hicks* would have been wrong, for the *pauper* applicants in those cases were both "detained in [a] facility" and had been "convicted of … violations of criminal law." 28 U.S.C. §1915(h).

This Court, and virtually all others, have adhered to the workable rule that a person who is detained for a reason other than criminal charges is not a "prisoner" under the PLRA. Mr. Banks, since October 9, 2015, has been detained because the

1

District Court made the determination that he should be committed "pursuant to 18 U.S.C. §4241." JA96. The government's brief glosses over the fact that Mr. Banks is held under §4241 because when it comes to this case, the government wants its cake and to eat it too: It submits that Mr. Banks is *not* a normal pretrial detainee, for purposes of the the government's obligation to bring Mr. Banks to trial quickly under the Speedy Trial Act—but that he *is* an ordinary prisoner under the Prison Litigation Reform Act, when it comes to Mr. Banks's ability to challenge his ongoing detention as a *pauper*. This tortured approach unhinges the three-strikes rule from its text and context.

Under the government's approach, the ability of a civil detainee—even one held indefinitely under §4146, the long-term-commitment provision—to challenge confinement would turn entirely on whether a district court has engaged in the ministerial task of entering a dismissal order. That position is both unmoored to case law and unworkable—which is why virtually every other federal court has rejected it.

And the government does not dispute that bona fide mandamus petitions related to a criminal proceeding, as well as habeas petitions, are outside §1915(g)'s bar. Resp.Br.28, 33 n.13. The government's argument, instead, turns on characterizing Mr. Banks's petition as one beyond the scope of the exception. In support of this position, the government advances a hypertechnical reading of Mr.

2

Banks's petition that is improper—especially when the litigant is pro se and believed to be mentally ill. This Court should grant Mr. Banks's *pauper* application because this case does not fall within the three-strikes rule.

## ARGUMENT

I.     **Mr. Banks Is Not A "Prisoner" Under §1915(g) Because His Nearly Two-Year Detention Is Not For Criminal Charges.**

Section 1915(g)'s three-strikes rule applies to suits brought by "a prisoner"—not by a civil detainee. And under the PLRA, "a prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. §1915(h).

This Court should faithfully adhere to the rule followed by this Court and the overwhelming consensus of other courts: The three-strikes bar does not encompass detainees, such as mental-health patients, who are held for a reason other than their criminal charges or convictions. Opening Br.19-23. Mr. Banks is detained pursuant to §4241. And because his detention is authorized pursuant to that statutory provision, not pursuant to his criminal charges, he is not a prisoner.

Excluding civil detainees, held pursuant to the civil-commitment provisions, from the definition of "prisoner" best respects common usage. Understanding the statute in this way also best accounts for §1915(h)'s coupling of "incarcerated"

with "detained."  Additionally, including mentally ill persons within the sweep of

the PLRA does not meaningfully advance the statute's goal of hedging vexatious

lawsuits about prison conditions or civil-rights violations.  Opening Br. 24-25.

Ultimately, the government has no good statutory basis for treating detention

differently in the context of the Speedy Trial Act than in the context of the Prison

Litigation Reform Act.  If Mr. Banks is not an ordinary detainee when it comes to

the government's obligation to quickly allow him to defend the charges against

him, then so too is he not an ordinary detainee when it comes to his ability to

litigate in this case *in forma pauperis*.

> **A.**     **The Government's Position on the Three-Strikes Rule Cannot Be Reconciled With This Court's Precedents or Those of Nearly Every Other Circuit.**

This Court has repeatedly adhered to the rule that detention for a reason

other than criminal charges removes a person from the ambit of the three-strikes

rule.  Opening Br.19-20.  Mr. Banks is detained because the District Court

exercised its authority under §4241 to order him to undergo evaluations and

treatment.  The government does not dispute that this Court and nearly every other

circuit have repeatedly held that the PLRA does not apply to mental-health

patients.  *See* Resp.Br.19-21.  Instead, the government attempts to minimize the

near unanimity of the circuits by suggesting that those cases merit little weight

4

because they "have to do with a civil commitment that is independent of the criminal process." *Id.* at 19. That argument relies on multiple missteps.

First, the government's premise about this Court's precedents is wrong. Contrary to the government's assertion, *Michau*, *Hicks*, and *Perkins*—as well as all the cases from other circuits—all involve civil detainees who had "been indicted" before their civil commitment. Resp.Br.19. The government suggests that *Michau* and *Hicks* do not command stare decisis because they involve individuals who had "completed [a] sentence on criminal charges." Resp.Br.19. But at the time that Mr. Michau filed suit, he had *not yet* completed his sentence, *Michau v. Charleston Cty.*, 434 F.3d 725, 727 (4th Cir. 2006)—and the government concedes that the relevant time period to determine a person's "status" is the date "the action or appeal was filed," Resp.Br.17. If anything, there may be stronger reason to classify a person "approaching the end of his sentences"—but who has not actually completed the sentences—as a "prisoner." *Michau*, 434 F.3d at 727. Yet there is absolutely no indication in this Court's case law that civil detainees' status—pre-trial, post-trial, post-sentence, or almost-post-sentence—influenced this Court's conclusion that such persons are not prisoners under the PLRA. Rather, the traditional and proper inquiry under this Court's law is whether a person "is *presently* being detained under [the civil-commitment regime]" and whether detention is "*the result* of a violation of criminal law." *Id.*; *accord Hicks v. James*,

5

255 F. App'x 744, 748 (4th Cir. 2007) (persons detained "not [as] the result of a violation of criminal law" are not prisoners under the PLRA).

Second, the government relies on an illusory distinction in the cases. It is unsurprising that *Michau*, *Hicks*, and *Perkins* were not decoupled from criminal proceedings because the government does not have any civil-commitment power outside the scope of a criminal proceeding. There is, in fact, no such thing as civil commitment "independent of the criminal process." Resp.Br.19. Mental illness is not a crime. *Cf. Robinson v. California*, 370 U.S. 660, 667 (1962) (criminalizing "an illness" violates the Eighth Amendment). And the federal government has no authority to civilly commit a mentally-ill person, no matter how erratic that person's behavior. The federal government's civil-commitment power only originates "*after* the commencement of a prosecution for an offense." 18 U.S.C. §4241(a) (emphasis added); *see United States v. Comstock*, 560 U.S. 126, 139 (2010) (Congress "provided for the civil commitment of individuals who are … mentally incompetent at any time *after their arrest*." (emphasis added)). What that means is that in order for the federal government to initiate civil-commitment proceedings against a mentally-ill person, the government must first persuade a grand jury to indict the person for a criminal offense.[1]

---

[1] Given the thousands of offenses in the federal criminal code, there may be reason to question the difficulty of doing so. *See* Gary Fields & John R. Emshwiller, *Many Failed Efforts to Count Nation's Federal Criminal Laws*, Wall

Faced with a bevy of authority from this Court and other circuits, the government relies on the only two panel decisions to have followed a different approach. Resp.Br.21. But as noted, no other circuit has followed, or even affirmatively cited, *Gibson* or *Kalinowski*. Opening Br.21 n.8. And in all events, a recent Seventh Circuit panel has distanced itself from *Kalinowski*. *Hughes v. Farris*, 809 F.3d 330, 335 (7th Cir. 2015).

### B.    The Government's Alternative Approaches Rest on Neither Law nor Reason.

The government offers two alternative rules to the one traditionally followed by this Court. The government offers no compelling reason to deviate from this Court's precedents, and neither alternative rule is grounded in law, and neither is workable.

**1.** First, the government suggests that a civil detainee "is a prisoner within the meaning of the PLRA" so long as the detainee faces "pending criminal charges." Resp.Br.15; *see id.* at 3. That approach is unattractive for the problematic reason that it would ensnarl any person in federal custody who happens to have lingering undismissed charges from the past, regardless of the relationship between the charges and the detention. Even the government

---

Street J., July 23, 2011, http://on.wsj.com/2oKFAiM (quoting law professor: "There is no one in the United States … who cannot be indicted for some federal crime."). Mr. Banks, for his part, was initially indicted on one count of interstate stalking stemming, in part, from a Craigslist posting. JA79.

disclaims the most expansive reading of §1915(h)'s text. It expressly acknowledges that not every detainee who has "'ever' been accused of a crime is a prisoner." Resp.Br.23. But the government offers no limiting principle. Its proposed rule—*i.e.*, pending criminal charges render a detainee a "prisoner"—sweeps too far.

Mr. Banks's case illustrates the myopia of the government's approach. The Supreme Court has said that the Constitution may mandate "[d]ismissal of charges against an incompetent accused" because of "the denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence." *Jackson v. Indiana*, 406 U.S. 715, 740 (1972). But even if the Constitution so requires, there is no statutory requirement that a district court dismiss charges against a person detained even indefinitely under the civil-commitment regime. *See* 18 U.S.C. §4246. And district courts may have little incentive to clear such charges from their dockets, as criminal matters are exempt from district judges' biannual case reports. *See* 28 U.S.C. §476.

Suppose, for instance, that Mr. Banks is eventually moved into indefinite civil commitment under §4246(d). Under the government's theory, whether Mr. Banks would qualify as a "prisoner"—and could proceed in federal court *in forma pauperis*—would turn entirely on whether the district court engages in the ministerial act of entering an order dismissing the charges. If such an order is

entered, Mr. Banks would cease to be a prisoner, in the government's view. But if Mr. Banks's case somehow slips through the cracks and is not administratively terminated, then Mr. Banks would forever remain a "prisoner" subject to the three-strikes rule.

Or suppose Mr. Banks's §4241 proceedings drag on for another two years.[2] Under the government's theory, Mr. Banks would remain a prisoner, no matter how far removed his civil commitment becomes from the initiation of charges against him.

**2.** Second, the government contends that a civil detainee "is a 'prisoner'" if "he is being detained under indictment." Resp.Br.21. That does not get the government far because Mr. Banks is detained not "under indictment" but under §4241(d), by which Congress authorized district courts to civilly "commit" persons believed to be mentally ill "to the custody of the Attorney General." The government's "indictment" theory also fails to account for the unanimous view of the courts of appeals that immigration detainees, even ones under indictment, are not prisoners under the PLRA. *See* Opening Br.21 n.9. Indeed, a person cannot even be detained "under indictment" because an indictment confers no authority to

---

[2] This is not inconceivable, in light of what has occurred since Mr. Banks's arraignment. And the government may have an additional incentive to keep Mr. Banks committed under §4241, rather than §4246: The latter provision requires that the government establish, by clear and convincing evidence, that a detainee is dangerous, while the former provision only requires a showing, by a preponderance of the evidence, that a detainee is mentally ill.

9

detain.  Under the Federal Rules, an indictment is a "plain, concise, and definite written statement of the essential facts constituting the offense."  Fed. R. Crim. P. 7(c).

### C.    Mr. Bank's Bail Denial Is Irrelevant Because He Is Detained Under §4241.

The government's final argument is that Mr. Banks is a prisoner because his detention stems, in part, from the District Court's denial of bail on account of dangerousness.  Resp.Br.22.  Mr. Banks's bail proceedings have little bearing on the issue before this Court.  Whatever the original reason for his detention, from August 2015 to October 2015, he is *now* being held under §4241.  And when Mr. Banks filed the underlying petition in this case, he was still being held under §4241.  Indeed, if Mr. Banks were presently being held on bail like an ordinary prisoner, he would be subject to the speedy-trial clock.  Even the government, though, recognizes that Mr. Banks is not presently subject to speedy-trial requirements, which only underscores the government's implicit acknowledgement that Mr. Banks is not really being held on bail at this point.[3]

---

[3]  At any rate, the government misconstrues the record of the bail proceedings.  The government's brief states that "the judge in [Mr. Banks's] criminal case [found that] he is a 'danger … to the community and others.'"  *Id.* at 15 (ellipsis in original).  The government's ellipsis significantly alters to the meaning of the sentence.  What the District Court actually stated is: Mr. Banks "poses a danger (both economic and physical) to the community and others."  JA133.  The District Court, for its part, pointed to no facts in the record to substantiate its inclusion of "physical."  Nor would it have been able to do so.  At

10

In other words, even assuming that Mr. Banks were violent and had been denied bail for that reason, that fact alone would not authorize Mr. Banks's nearly two-year stint in federal custody. Persons for whom bail is denied are only detained temporarily, until they are brought to trial. Federal law contemplates that that brief detention lasts no more than two-and-a-half months, 18 U.S.C. §3161(c)(1)—not 20 months. And the government has been relieved of its obligation to bring Mr. Banks to trial speedily not "because he was found to be a danger to the community," Resp.Br.22, but *solely* because of mental-competency evaluations and treatment, §3161(h)(1)-(4).

### D.    This Court Should Resolve Any Ambiguity in the Three-Strikes Rule in Favor of Mental-Health Patients.

To the extent the PLRA's definition of "prisoner" reflects any ambiguity, this Court should resolve it in favor of mental-health patients.

First, the Supreme Court has consistently read 28 U.S.C. §1915, the *in forma pauperis* statute, expansively. Opening Br.3-4. This Court should not buck that trend, absent reasonable certainty that Congress intended to include civil detainees within the PLRA's definition of "prisoner." The government points to not a word

---

the actual arraignment, the government offered no evidence that Mr. Banks had ever been violent. Opening Br.7. Then, in November 2013, Dr. Wettstein determined that Mr. Banks posed no threat of violence. *Id.* at 7-8. And then at the December 9, 2015, hearing, Dr. Wettstein again testified that Mr. Banks did not have "any history of violence" and had never made "any threats of violence" to anyone. JA124.

11

in the legislative record that suggests that Congress was concerned about a deluge of litigation from mentally-ill persons civilly committed to the custody of the Attorney General. *See* Resp.Br.5-7. *Pauper* litigation indeed sometimes entails "attempting to separate … not so much wheat from chaff as needles from haystacks." *Jones v. Bock*, 549 U.S. 199, 224 (2007). Nonetheless, that is a game that the Third Branch has decidedly determined to be worth the candle. We "should not presume in advance that prolific indigent litigants will never bring a meritorious claim." *In re Sindram*, 498 U.S. 177, 182 (1991) (Marshall, J., with Blackmun & Stevens, JJ., dissenting). Because "[b]y closing our door" to litigants like Frederick Banks, "we run the unacceptable risk of impeding a future Clarence Earl Gideon." *Id.*

For that matter, the position of the Department of Justice today is incongruent with the position of the Department of Justice a half-century ago. Today, the government urges this Court to expand the three-strikes rule further than it has ever been applied in order to bar a mental-health patient, held by the United States for nearly two years, from availing himself of the *pauper* statute. The government has come a long way from its position that expanding §1915's benefits to as many people as possible is "consonant with the ideas or policies of the United States." H.R. Rep. No. 650, 86th Cong., 1st Sess., 2 (1959) (stating position of Department of Justice).

12

Accordingly, in the absence of a much clearer statement than §1915 provides, this Court should err on the side of overprotecting the right to proceed *in forma pauperis*. Should Congress become concerned about "abusive suits" from §4241 detainees, Congress can easily amend the statute to address those concerns. "[O]ne virtue of legislative protections ... is that they can be modified more readily if they over-protect or under-protect a right." *Haight v. Thompson*, 763 F.3d 554, 566 (6th Cir. 2014) (Sutton, J.). Congress has consistently signaled that the *pauper* statute should be construed in a way "to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

But there is no evidence that abusive litigation by §4241 detainees is a serious problem. For one thing, the fact that questions about §4241 detainees so rarely arise suggests that the federal courts are not, in fact, flooded by *pauper* applications from mental-health patients detained under §4241.[4] In contrast to the 26,000 prison-condition and civil-rights lawsuits filed in 2015 by traditional prisoners, federal courts receive an average of roughly 80 cases per year under §4241. *See* Opening Br.25 n.10.

---

[4] Another reason that this issue has heretofore not yet arisen is that detention under §4241 is intended to be very brief. Mr. Banks's ability to file, appeal, and brief this lawsuit—all while remaining a §4241 detainee—underscores the extraordinariness of his lengthy civil commitment.

13

Finally, getting this issue right should be especially important to this Court because of the location of the Federal Medical Center at Butner, one of the largest federal mental-health facilities in the United States, within this circuit.[5]   In light of this expertise, this Court should remain particularly vigilant of ensuring that the mentally ill—and those believed to be mentally ill—have meaningful access to the courthouse.   If there were really a problem with abusive litigation by §4241 detainees, this Court would have been the first to know.   To the extent it might even be a problem down the road, it would be a problem for Congress to fix. There is no evidence that the PLRA was drafted with §4241 detainees in mind.

## II.    Habeas Petitions and Bona Fide Mandamus Petitions Do Not Fall Within the Three-Strikes Rule.

The three-strikes rule has no bearing on Mr. Banks's case for another reason: He does not seek relief within the scope of the rule.   The three-strikes bar prevents litigants from undertaking only two actions as a *pauper*: "bring[ing] a civil action or appeal[ing] a judgment in a civil action."    §1915(g).    The government acknowledges that both bona fide mandamus petitions related to criminal cases and habeas petitions are exempt from the PLRA.   Resp.Br.28, 33 n.13.

---

[5]    This Court, for instance, has heard far more cases under §4246, the provision authorizing long-term civil commitment, than any other circuit.   And it has heard nearly as many cases under §4248, the provision authorizing the civil commitment of sexual predators, as every other circuit combined.

14

The government nonetheless contends that Mr. Banks should not benefit from the exception for mandamus petitions because Mr. Banks's mandamus petition is one under 28 U.S.C. §1361, rather than one under 28 U.S.C. §1651. But none of the decisions exempting mandamus petitions from the three-strikes bar has turned on the difference between a §1361 and §1651 petition. *See* Opening Br.27-29. The only panel to have addressed the question observed that the "same considerations may apply" to petitions under §1351 as to those under §1651. *Madden v. Myers*, 102 F.3d 74, 76 n.2 (3d Cir. 1996).[6]

Nearly all the cases cited by the government do not support the government's supposition that §1361 petitions merit different treatment from §1651 petitions. Resp.Br.27-28. *Simmat* says nothing about whether §1361 petitions are always subject to the three-strikes rule. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1228 (10th Cir. 2005). The case does not even cite §1915(g). And in *In re Grant*, the D.C. Circuit's decision to apply the filing-fee requirements to the mandamus petition definitively turned on the fact that the petition was filed in connection with a civil case—not its status as a §1361 or §1651 petition. 635 F.3d 1227, 1230 (D.C. Cir. 2011). In fact, the D.C. Circuit

---

[6] The government, without actually quoting the decision, states that *Madden* "did not imply that a petition under section 1361 … *should* be treated the same way" and that *Madden* "merely reserved the issue." Resp.Br.29 n.11. Although the Third Circuit did reserve the question, the panel also suggested that the two kinds of petitions merit similar treatment.

15

expressly limited its holding to a petition that "stems from a civil proceeding," distinguishing "petitions for writs of mandamus when the underlying proceedings are criminal or concern an application for a writ of habeas corpus." *Id.* at 1231 n.4. The same is true of the Third Circuit's unpublished decision in *In re Banks*, 450 F. App'x 155 (3d Cir. 2011). The panel found that a particular §1361 petition would require fees because it was essentially a civil suit, *id.* at 157 n.1, but it did not hold that §1361 petitions are per se different than §1651 petitions.[7]

The crux of the government's argument, however, is not that Mr. Banks is wrong about the law, but that he is wrong about the relief he seeks. Resp.Br.29-34. The government contends that "Mr. Banks's petition is in no way a mandamus petition" relating to a criminal case and that there is not "any basis for … interpret[ing it] as a habeas petition." *Id.* at 29 n.11, 33.

The government's approach relies on a hypertechnical reading of Mr. Banks's petition—a petition filed by a pro se litigant thought to be mentally ill. That context certainly matters. Mr. Banks, at the time, had been in federal custody for nearly a year under a provision that contemplates a four-month detention. Additionally, the titles of the documents that Mr. Banks filed in the District Court

---

[7] In support of its argument, the government is left with a single sentence from an 18-year-old, unpublished, out-of-circuit, per curiam decision. Resp.Br.27 (quoting *Martin v. Grimshaw*, 198 F.3d 248 (Table), 1999 WL 1021705 at *1 (6th Cir. 1999)). That sentence, accompanied by no reasoning from the panel, merits de minimis weight.

around this time leave little question that he was doing anything and everything in his capability to challenge the legality of his detention. *See id.* at 12-13. A request to a federal court to order the government to establish the legality of a person's confinement is a classic habeas corpus petition. The government's brief is conspicuous for what it omits: any acknowledgement of the context in which Mr. Banks filed his petition.

The government's approach is also inconsistent with how the Supreme Court construes pleadings. As the Court has said, pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014). In *Johnson*, the Court held that litigants do not need to invoke 42 U.S.C. §1983 by number in order for a viable claim to move forward under that provision. *Id.* at 347. In Mr. Banks's case, it is true that his petition does not invoke the federal habeas statute by title and section number. But there is no requirement that he do so.

The government's hypertechnical reading of Mr. Banks's petition is, at any rate, a selective one. For instance, paragraph 5 of Mr. Banks's petition urges the government to "present evidence against the Defendant's related to the charges above." JA5. Interpreting this language, the government asserts that "the term 'Defendant's [sic]' is obviously referring to the defendants named in the petition," rather than to Mr. Banks. Resp.Br.31 n.12. That is not at all obvious in context,

17

particularly given that the government overlooks paragraph 1, which references the August 11, 2015, "arraignment on the charges in USA v. Banks 15CR168(WDPA)," and paragraph 5, which again, refers back to the "charges above." JA5. To be sure, the government's textual reading is not wholly implausible. But the government's reading of the text is not "obviously" correct and should not be assumed given the requirement to construe pro se pleadings liberally. *See Johnson*, 135 S. Ct. at 346.

## III.   Section 1915(g) Does not Authorize Dismissal.

Section 1915(g) limits the discretion of federal courts, under §1915, to allow prisoners to proceed *in forma pauperis*. Because §1915(g) is not itself a basis for dismissing a petition, the District Court erred when it dismissed Mr. Banks's filing under that provision. *See* Opening Br.35-38. The government makes no contrary argument. All the government suggests is that the District Court "did what Mr. Banks apparently thinks it should have done" when it dismissed his petition "without prejudice." Resp.Br.35. For one thing, nothing about §1915(g) suggests that it makes a difference whether a dismissal is with or without prejudice. And Mr. Banks does not think that the District Court did what it should have done. The District Court committed reversible error.

* * *

18

Civil commitment under §4241 is subject to constitutional, as well as statutory, restrictions. The Supreme Court has held that detainment of a defendant under that provision is constitutional only insofar as one is confined "for a 'reasonable period of time' necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future." *Jackson v. Indiana*, 406 U.S. 715, 733 (1972). "If the chances are slight, or if the defendant does not in fact improve, then he must be released or granted a [long-term-commitment] hearing."

Since the opening brief was filed in this case, the District Court has introduced further delay by granting the government's request to have the four-month treatment period run not from the District Court's October 3 order but from the date the government transferred Mr. Banks into treatment—December 6, 2016. Order, *United States v. Banks*, No. 2:15-cr-168 (W.D. Pa. Feb. 8, 2017), ECF No. 273. On March 30, the District Court, to its credit, ordered to government to start respecting deadlines and to file a final evaluation report by April 5. Order, *United States v. Banks*, No. 2:15-cr-168 (W.D. Pa. Mar. 30, 2017), ECF No. 288. In particular, it directed the government to provide "clear, specific, and definitive answers" about Mr. Banks's mental health.[8] *Id.* Although the filing of a final report might prove to be a step in the right direction, it does not obviate the need

---

[8] On April 5, 2017, the government submitted a document to the District Court, but the document is under seal.

for Mr. Banks to have full and fair access to the courts to ensure that his detention is indeed lawful.

## CONCLUSION

This Court should grant Mr. Banks's application to proceed *in forma pauperis*. It should also vacate the judgment below and remand for further proceedings.

Respectfully submitted,

<u>s/Robert M. Bernstein</u>

ERIN E. MURPHY
ROBERT M. BERNSTEIN
 *Counsel of Record*
KIRKLAND & ELLIS LLP
Suite 1200
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5042
robert.bernstein@kirkland.com

*Counsel for Petitioner-Appellant*

April 7, 2017

20

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,740 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font.

DATE: April 7, 2017

s/Robert M. Bernstein
Robert M. Bernstein

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Robert M. Bernstein</u>
Robert M. Bernstein